[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12805
Non-Argument Calendar

_____

D. C. Docket No. 06-00137-CR-RWS-3-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROMONA JOSEFINA ESPINOSA-MEJIA,
a.k.a. Josefina,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 20, 2008)**

Before TJOFLAT, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Appellant Romona Josefina Espinosa-Mejia ("Espinosa") pleaded guilty to

conspiring to possess with intent to distribute at least five kilograms of a substance containing more than a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846. She appeals both her sentence and the district court's accompanying forfeiture order. After reviewing the record and reading the parties' briefs, we affirm Espinosa's sentence and the district court's forfeiture order.

## I. BACKGROUND[1]

Sometime in January 2005, the FBI began investigating a drug conspiracy headed by Carlos Gomez, also known as Abel Aranda-Salgado ("Gomez"). For six months, the FBI monitored a telephone used by Gomez, and in several calls Espinosa and Gomez discussed distribution of multiple kilograms of cocaine. In December 2005, the FBI witnessed Espinosa deliver approximately three kilograms of cocaine to Edwin Parker. The FBI subsequently arrested Espinosa.

After her arrest, Espinosa admitted to a relationship with Gomez and admitted that she learned about Gomez's drug-related activities in 2004. Espinosa further admitted that, after a burglary at Gomez's apartment, she obtained two safe deposit boxes in which to store Gomez's drug proceeds. She acted as courier—storing and retrieving drug proceeds from the safe deposit boxes at

---

[1] The Court derives the facts from the uncontested portion of the plea colloquy, R. Vol. 4, DE 286 at 6-9, and the admitted facts in the Presentence Investigation Report ("PSI").

Gomez's request—but also kept her own money in the safe deposit boxes.[2] She also admitted that, in addition to the transaction the FBI witnessed, she had picked up drug proceeds from Parker on numerous other occasions. At sentencing, over Espinosa's objection, the district court admitted testimonial statements from a co-defendant detailing four other drug transactions, involving a total of 30 to 40 kilograms of cocaine, in which Espinosa participated. After her arrest, the agents seized approximately $120,000 from the safe deposit boxes, $25,000 of which Espinosa claimed was her own, earned by making small loans in her community and by "slow dancing."

Based on the above facts, Espinosa pleaded guilty to participating in Gomez's drug conspiracy. The PSI concluded that Espinosa's relevant conduct included the conspiracy's full amount of cocaine—more than the Guidelines maximum of 150 kilograms.[3] Therefore, her base offense level was 38. *See* U.S.S.G. § 2D1.1(c)(1) (2005). Espinosa qualified for a two-level safety valve reduction, U.S.S.G. §§ 2D1.1(b)(7) & 5C1.2 (2005), and a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1 (2005). Given her criminal history

---

[2] The PSI notes that Espinosa accessed one safe deposit box 28 times and the other 11 times, but only identifies three instances where a trip to a safe deposit box correlates with a phone call from Gomez directing her to deposit or withdraw funds.

[3] She did not contest that one member of the Gomez conspiracy alone, *viz.* her sister "Reyna," trafficked more than 150 kilograms of cocaine.

category of I, and the total offense level 33, the PSI calculated a Guidelines range of 135 to 168 months imprisonment.

Espinosa challenged two aspects to the PSI Guidelines calculation. First, she argued that she was only responsible for five to fifteen kilograms of cocaine,[4] so her base offense level should have been much lower. Second, she urged the court to grant her a two to four level minor/minimal role adjustment. U.S.S.G. § 3B1.2 (2005). The district court rejected her first argument, finding that though "the specific connection of [Espinosa] to actual discrete instances may not rise to the level of 150 [kilograms], her participation in an enterprise that did involve that level of drugs was known to her." R. Vol. 8, DE 290 at 171. The court agreed with her second argument, however, reasoning that "having held her accountable for all of the activities of the conspiracy, I should gauge her conduct and her role in looking at the conspiracy as a whole." *Id.* at 171-72. The court therefore granted Espinosa a two-level adjustment for her minor role in the conspiracy, and the incident four-level reduction in base-offense level. *Id.* at 172; *see* U.S.S.G. §§ 3B1.2(b) & 2D1.1(a)(3) (2005). With a total offense level of 27 and a criminal

---

[4] Espinosa apparently bases this figure on the amount of cocaine the cash deposited in the safe deposit boxes would have purchased—approximately six kilograms. R. Vol. 8, DE 290 at 162; *see also United States v. Tokars*, 95 F.3d 1520, 1542 (11th Cir. 1996) (holding "that money attributable to . . . drug transactions may be converted to the equivalent amount of drugs for purposes of determining the drug quantity").

history category of I, Espinosa's Guidelines range was 70 to 87 months imprisonment. The district court, considering the admitted facts, the Guidelines, and the factors set forth in 18 U.S.C. § 3553(a), sentenced Espinosa to 87 months imprisonment.

Espinosa raises five issues on appeal: (1) whether the district court erred in finding her accountable for more than 150 kilograms of cocaine; (2) whether the district court violated her Sixth Amendment rights by sentencing her based on more than 150 kilograms of cocaine when the facts were found by a preponderance of the evidence rather than beyond a reasonable doubt; (3) whether the district court violated her Sixth Amendment rights, or evidentiary rules applicable at sentencing, when it admitted the out-of-court statements of her codefendant; (4) whether the 87-month prison sentence was unreasonable; and (5) whether the forfeiture order was supported by sufficient evidence.

## II. STANDARDS OF REVIEW

We review for clear error the district court's factual determination of the drug quantity for which Espinosa is accountable. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005).

We review de novo Espinosa's Sixth Amendment challenges—one to the

standard for fact-finding in the post-*Booker*[5] federal sentencing scheme, and one based on the admission of testimonial hearsay during sentencing. *United States v. Yates*, 438 F.3d 1307, 1311 (11th Cir. 2006).

We review a criminal sentence for a procedural or substantive abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

When a district court orders a criminal forfeiture, we review its findings of fact for clear error and its conclusions of law de novo. *United States v. Kennedy*, 201 F.3d 1324, 1329 (11th Cir. 2000).

## III.  DISCUSSION

*A.  Drug Quantity*

Espinosa argues that the district court clearly erred when it concluded that her relevant conduct included the full amount of drugs in Gomez's conspiracy. The Guidelines define "Relevant Conduct" for sentencing purposes to include "in the case of a jointly undertaken criminal activity . . ., all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3 (2005).

The Application Notes clarify that, in the case of contraband, the conspirator's relevant conduct includes amounts directly attributable to the

---

[5] *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

conspirator and "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [the conspirator] jointly undertook." *Id.* cmt. n.2. The "scope of the criminal activity that [the conspirator] jointly undertook," however, is not the same as the scope of the entire conspiracy; rather, the jointly undertaken criminal activity is limited to "the scope of the specific conduct and objectives embraced by the defendant's agreement." *Id.* Similarly, "the criminal activity that the defendant agreed to jointly undertake, and the reasonably foreseeable conduct of others in furtherance of that criminal activity, are not necessarily identical." *Id.* For this reason, we have held that

> to determine a defendant's liability for the acts of others, the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant. Once the extent of a defendant's participation in the conspiracy is established, the court can determine the drug quantities reasonably foreseeable in connection with that level of participation.

*United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir. 1993) (citations omitted).

The judge overruled Espinosa's relevant-conduct objection because

> [Though] the specific connection of the defendant to actual discrete instances may not rise to the level of 150 [kilograms], her participation in an enterprise that did involve that level of drugs was known to her. She was aware enough of what was going on, of the money that was moving through the organization. She continued to derive benefits from that and to facilitate that such that she was connected sufficiently to the conspiracy and its activities, that she is accountable for the entirety of the conspiracy and its activities.

7

R. Vol. 3, DE 290 at 171. In other words, the district court found that her multiple individual acts in support of the conspiracy were sufficient to find that she agreed to the conspiracy in its entirety. Espinosa challenges that finding as clear error because she claims she participated in the conspiracy on a favor-by-favor basis, agreeing only to the specific favors, so she only jointly undertook the specific acts and objectives of each favor.

We have held that "the Guidelines establish that the fact that the defendant knows about the larger operation, and has agreed to perform a particular act, does not amount to acquiescence in the acts of the criminal enterprise as a whole." *United States v. Hunter*, 323 F.3d 1314, 1320 (11th Cir. 2003). The Guidelines provide a concrete illustration:

> Defendant O knows about her boyfriend's ongoing drug-trafficking activity, but agrees to participate on only one occasion by making a delivery for him at his request when he was ill. Defendant O is accountable under subsection (a)(1)(A) for the drug quantity involved on that one occasion. Defendant O is not accountable for the other drug sales made by her boyfriend because those sales were not in furtherance of her jointly undertaken criminal activity (*i.e.*, the one delivery).

U.S.S.G. § 1B1.3, illus. (c)(5) (2005). The question here is whether it is clear error for the district court to find, where Defendant O performs more than 38 individual

favors for her boyfriend,[6] that she agreed to join the boyfriend's entire operation. We hold that such a finding is not clear error. At some point, where a defendant knows the scope of a large operation and agrees to multiple acts assisting that operation, the discrete acts can be aggregated to constitute assent to jointly undertake the operation as a whole. In essence, at some point the defendant ceases to be performing favors for her boyfriend, and is instead performing tasks for the conspiracy. Therefore, though the conclusion was not compelled by the record, it was not clear error for the district court to find that Espinosa agreed to jointly undertake Gomez's entire conspiracy.

*B. Fact-finding Standard*

Espinosa argues that the district court's fact-finding at sentencing, based on a preponderance of the evidence standard, violated her Sixth Amendment right to a jury trial. Espinosa concedes that the argument is foreclosed by binding circuit precedent. *See United States v. Smith*, 480 F.3d 1277, 1281 (11th Cir. 2007) ("Because the court understood it was operating under an advisory [Guidelines] scheme, its fact-finding did not implicate the Sixth Amendment.").

---

[6] We note that if each favor was simply another drug delivery, Defendant O would be equivalent to a "street-level drug dealer" or a middle-man as discussed in § 1B1.3, illustrations (c)(6) and (c)(7). In such situations, it would be clear error to include the entire conspiracy's drug quantity in Defendant O's relevant conduct. Here, however, Espinosa not only made at least one drug delivery, she also handled money for the operation.

9

*C. Hearsay Declarations*

Espinosa argues that the district court violated her Sixth Amendment right to confront the witnesses against her by admitting her codefendant's testimonial statement at her sentencing hearing . This argument is also foreclosed by binding circuit precedent. *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005); *see also United States v. Smith*, 480 F.3d 1277, 1281 (11th Cir. 2007) ("Because the court understood it was operating under an advisory [Guidelines] scheme, its fact-finding did not implicate the Sixth Amendment.").

In the alternative, Espinosa argues that the district court erroneously admitted her codefendant's testimonial statements despite a lack of sufficient indicia of reliability to support its probable accuracy. We need not address the issue because, even if the district court erred by admitting the statement into evidence, the error was harmless. As detailed above, the district court attributed more than 150 kilograms of cocaine, the Guidelines maximum, to Espinosa because it found that she agreed to jointly undertake Gomez's entire conspiracy, and because she knew the conspiracy involved a massive amount of cocaine—100 to 200 kilograms per month. That conclusion rests on grounds entirely separate from her codefendant's statement, which implicated her in four drug transactions totaling 30 to 40 kilograms. In short, the district court's findings, unrelated to the

10

codefendant's statement, require that she be held to the maximum Guidelines range, so any error in admitting the statement was harmless.

*D. Sentence Reasonableness*

Espinosa attacks her sentence as substantively unreasonable and as the product of procedural error. First, we reject Espinosa's procedural argument. The Supreme Court summarized the proper sentencing procedure as follows:

> As we explained in *Rita* [*v. United States*, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007)], a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

*Gall v. United States*, 128 S. Ct. 586, 596-97 (2007). The sentencing transcript demonstrates that the district court followed this procedure precisely. R. Vol. 8, DE 290. The court calculated the applicable Guidelines range, *id.* at 171-73, heard Espinosa's argument in favor of a lenient sentence, *id.* at 158-170, considered the § 3553(a) factors, *id.* at 173-75, afforded the Guidelines no presumption of reasonableness, *id.* at 174-75 ("I have considered both the Sentencing Guidelines and the [§] 3553 factors in arriving at this sentence and believe that this is a

11

reasonable sentence under all the circumstances."), and explained the sentence, *id.* at 173-75. The law requires nothing more.

Likewise, an 87-month prison sentence for substantial involvement in a massive drug conspiracy is not substantively unreasonable. A district court, taking account of the totality of the circumstances in an individual defendant's case, has broad discretion to craft "a sentence sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to satisfy the purposes of criminal punishment set forth in § 3553(a)(2). Espinosa's 87-month prison sentence is well within that discretionary range.

*E. Forfeiture Order*

Finally, Espinosa argues that the district court failed to make adequate findings to support its order that the $25,000 recovered from a safe deposit box, and claimed by her, be forfeited. She maintains that there was insufficient evidence to establish that she obtained this money during the period of the conspiracy, or that there was no other source aside from Gomez's drug-related business from which this money could have been derived, and therefore, the presumption under 21 U.S.C. § 853(d) was not triggered. Further, she argues, even if the presumption did arise, it was rebutted by her post-arrest statements, as well as the findings in the presentence report, and the wire recordings, which corroborated that she obtained

12

funds independently of Gomez.

We review the legality of a forfeiture order *de novo* and the court's factual findings for the sufficiency of the evidence. *See United States v. Hasson*, 333 F.3d 1264, 1275 (11th Cir. 2003). Section § 853(a)(1) subjects to forfeiture "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [a narcotics] violation." 21 U.S.C. § 853(a)(1). Because forfeiture is part of sentencing and not an element of the offense, the elements of criminal forfeiture under section 853(a)(1), must be proven only by a preponderance of the evidence. *United States v. Elgersma,* 971 F.2d 690, 697 (11th Cir. 1992). Section 853(d) creates a rebuttable presumption that any property of a person convicted of a narcotics violation is subject to forfeiture if the government establishes by a preponderance of the evidence that such property was acquired during the period of a narcotics violation, or within a reasonable time after such period, and there was no likely source for such property other than that violation. 21 U.S.C. § 853(d).

Testimony at sentencing, which established that Espinosa was not engaged in any employment during the pendency of the investigation, was sufficient to trigger the presumption under § 853(d). Because Espinosa failed to rebut that presumption, the district court's finding that the $25,000 was subject to forfeiture

13

was based on sufficient evidence.

## IV. CONCLUSION

For the above-stated reasons, we affirm Espinosa's sentence and the district court's forfeiture order.

**AFFIRMED.**